UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

VICTOR VILLEGAS,         CIVIL NO. 08-176 (JNE/JSM)

  Petitioner,

v.              <u>REPORT AND RECOMMENDATION</u>

DUKE TERRELL, WARDEN,

  Respondent.

  JANIE S. MAYERON, U.S. Magistrate Judge

  This matter is before the undersigned Magistrate Judge of the District Court on the petition of federal prisoner Victor Villegas for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Petitioner claims that he has been deprived of a constitutionally protected liberty interest without due process of law, in violation of his rights under the Fifth Amendment, as a result of a disciplinary action taken against him during his confinement. Petitioner seeks restoration of 40 days of good-time credit that were forfeited pursuant to the disciplinary action, along with a commensurate adjustment of his release date, and also seeks to vacate the findings of the disciplinary hearing officer. Respondent has filed a response contending that the Petition should be denied. [Docket No. 7]. Petitioner then filed a reply to the Response. [Docket No. 13].

  The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be DENIED, and that this action should be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Petitioner is currently incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). He was sentenced by Judge James Rosenbaum in the United States District Court for the District of Minnesota to 210 months, with 5 years of supervised release, for conspiracy to distribute and possession with intent to distribute methamphetamine, use of a communication facility to further a drug felony, and conspiracy to launder money in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(a), 846, 843(b) and 18 U.S.C. §§ 2 and 1956. United States v. Villegas, Criminal No. 97-124 (JMR/AJB) (D.Minn. April 16, 1997); see also Declaration of Ann Norenberg ("Norenberg Decl."), ¶ 3 [Docket No. 8]. Petitioner has a projected release date of August 31, 2012, via good conduct time release. Norenberg Decl., ¶ 3.

The facts underlying Petitioner's suit are these: On March 1, 2006, a cellular telephone was discovered in dorm 209, in room 214 which was assigned to another inmate, Hines.[1] Norenberg Decl., Attachment B (Memorandum from S. Akervik dated July 12, 2006). The phone was found under Hine's pillow on his bed, charging. Id. Hines admitted that the cell phone belonged to him. Id. The phone was sent to the FBI's forensic lab for extraction of data. Id. On July 12, 2006, an investigation of the data extracted from the cell phone by the FBI forensic lab revealed that Petitioner had personal data (i.e. a phone number for Petitioner's mother-in-law)[2] stored in the cell

---

[1] Petitioner resided in a different room, room 209, which was also in dorm 209. Pet. Mem., p. 5.

[2] The July 12, 2006 Report referred to the telephone number in question as being listed to Petitioner's grandmother. Norenberg Decl., Attachment B (Memorandum from S. Akervik dated July 12, 2006). However, Petitioner maintained that the number

2

phone telephone phonebook.  Id.  This phone number matched a phone number on Petitioner's telephone list maintained on the Inmate Telephone System (ITS) accounts; at the same time, no personal data belonging to Hines was recovered from the phone during the investigation.  Id.  In addition, the investigation disclosed that Petitioner was talking to family members, including calls commencing February 27, 2006 from the number at issue on Hines' cell phone.  Id.; Norenberg Decl., Attachment B (FBI Telephone Number Usage dated May 18, 2006; INTRUDR Call Search Report dated June 9, 2006)).  Based on this information, on July 12, 2006, prison officials concluded that Petitioner had access to Hines' cell phone, and Petitioner was issued an incident report for Conduct Which Disrupts the Security or Orderly Running of the Institution, Most Like Possession of a Hazardous Tool (Code 199, most like Code 108).  Pet. Mem., Appendix A (Incident Report dated July 12, 2006).

The matter was referred to the Unit Discipline Committee ("UDC") for review on July 13, 2006, and Petitioner stated that he was not guilty.  Norenberg Decl., ¶ 5.  The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") for disposition.  Id.  The DHO hearing was held on August 2, 2006.  Norenberg Decl., ¶ 6.  Petitioner was advised of his rights prior to and during the hearing; he initially requested a staff representative to assist him, but later waived the appearance of the staff representative. Id.; Attachment B (Incident Report dated July 12, 2006, p. 2; Inmate Rights at Discipline Hearing dated July 13, 2006; Duties of Staff Representative dated July 13, 2006; Notice of Advisement dated July 13, 2006; Notice of Discipline Hearing Before the DHO dated July 13, 2006).  Petitioner denied the charges, and stated that the phone belonged to

---

belonged to his mother-in-law, the grandparent of his kids.  See Pet. Mem., Appendix B (Discipline Hearing Officer Report dated September 5, 2006)

Hines, and that Hines had been caught with the phone, not him. Pet. Mem., Appendix B (Discipline Hearing Officer Report dated September 5, 2006). Petitioner also stated that he had given Hines his mother-in-law's phone number to help Hines, and that Petitioner had added the telephone number to his telephone list after Hines' cell phone had been confiscated. Id.

After consideration of the evidence presented by Petitioner and evidence that the cell phone was recovered in the inmate housing unit to which Petitioner was assigned, the report from the FBI on the cell phone identifying a telephone number found on Petitioner's telephone list, a report identifying Petitioner as the only inmate with this telephone number on a inmate telephone list, and that the cell phone did not have any numbers in it belonging to Hines, the DHO concluded that the greater weight of evidence supported the conclusion that Petitioner had access to, and knowledge of, the cell phone recovered from the housing unit to which he was assigned. Pet. Mem., Appendix B (Discipline Hearing Officer Report dated September 5, 2006). On this basis, the DHO found that Petitioner had committed the prohibited act of Conduct Which Disrupts the Security or Orderly Running of the Institution, Most Like Possession of a Hazardous Tool (Code 199, most like Code 108). Norenberg Decl., ¶ 7; Pet. Mem., Appendix B (Discipline Hearing Officer Report dated September 5, 2006). The disciplinary sanctions imposed by the DHO included the disallowance of 40 days of good conduct time. Id.

Petitioner appealed the findings of the DHO through the Administrative Remedy Program and the decision was upheld at both the Regional and Central Office levels.

Norenberg Decl., ¶ 8; Pet. Mem., Appendix C.  As such, according to Respondent, Petitioner appropriately exhausted his administrative remedies.  Norenberg Decl., ¶ 8;

## II. DISCUSSION

Petitioner contended that the decision of the DHO deprived him of due process[3] because there was no evidence presented to the DHO that supported the guilty finding. Pet. Mem., p. 3 [Docket No. 2].  In opposition, Respondents asserted that Petitioner's due process rights were met in this case, and that there was sufficient evidence to support the findings of the DHO.  Resp. Mem., pp. 5, 8 [Docket No. 7].

A prisoner cannot be deprived of good-time credits without being afforded at least some procedural due process protections.  Wolff v. McDonnell, 418 U.S. 539 (1974).  However, a prisoner facing a loss of good-time credits is not entitled to the full panoply of procedural safeguards that attend a criminal prosecution.  Id. at 556.  To satisfy the constitutional requirement of due process, a prison disciplinary action must satisfy only the simple procedural requirements prescribed in Wolff.  There, the Supreme Court held that prisoners facing a loss of good-time credits must be given (1) advance written notice of the charges, (2) an opportunity to present witness testimony and other evidence, and (3) a written explanation of the ultimate resolution of the charges.  418 U.S. at 561.  See also Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir.), cert. denied, 537 U.S. 870 (2002) (applying Wolff requirements); Allen v. Reese, 52 Fed.Appx. 7, 8 (8th Cir. 2002) (unpublished opinion) (holding that federal prisoner's right to due process was satisfied, as he was given (i) written notice of the charges

---

[3] While Petitioner asserted his due process claims under the Fifth Amendment, the Court assumes that he is pursuing his due process claim under the Fourteenth Amendment.

5

against him, (ii) the right to call witnesses, and (ii) a written report of the DHO's decision), cert. denied, 540 U.S. 849 (2003)). Due process also requires that there must be "some evidence" supporting the disciplinary determination. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985). See also Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[w]hen inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record").

As a preliminary matter, this Court finds that Petitioner was afforded the procedural benefits prescribed by Wolff, and notes that Petitioner did not claim otherwise. Petitioner was given written notice of the charges against him and signed an acknowledgement of those rights; he was advised of his rights by a staff member; he was given a hearing and an opportunity to have a staff member represent him and present evidence at that hearing; and he was given a written summary of the DHO's findings. Norenberg Decl., ¶¶ 6-7; Attachment B (Incident Report dated July 12, 2006, p. 2; Inmate Rights at Discipline Hearing dated July 13, 2006; Duties of Staff Representative dated July 13, 2006; Notice of Advisement dated July 13, 2006; Notice of Discipline Hearing Before the DHO dated July 13, 2006); Pet. Mem., Appendix B (Discipline Hearing Officer Report dated September 5, 2006).

Nevertheless, despite these procedural safeguards, Petitioner asserted that his due process rights were violated because the decision of the DHO was based on

"erroneous information and unreasonable inferrences [sic]." Pet. Mem., p. 4. In support of his position, Petitioner argued the following:

- Inmate Hines, to whom the phone actually belonged, admitted that the phone found in his room belonged to Hines.

- Petitioner never denied giving Hines his mother-in-law's phone number.

- Petitioner did not know that Hines owned a cell phone or that Hines had stored Petitioner's family's number in it.[4]

- While his mother-in-law's phone number was found on Hines' cell phone and the number matched the number on Petitioner's telephone list, the number was added to this telephone list nearly two months after the cell phone had been confiscated.

- This phone number was never called from the cell phone.[5]

- None of the phone numbers stored within the cell phone belonged to Hines.[6]

- There were three other phone numbers stored in the cell phone's memory.[7]

- Contrary to Respondent's statement that the FBI labs did not recover any personal data belonging to another inmate, the FBI recovered information on inmate Marcelo Vasquez whose numbers were stored on the cell phone.[8]

---

[4]  There is nothing before the Court to suggest that this evidence was part of the record before the DHO.

[5]  There is nothing before the Court to suggest that this evidence was part of the record before the DHO.

[6]  There is nothing before the Court to suggest that this evidence was part of the record before the DHO.

[7]  There is nothing before the Court to suggest that this evidence was part of the record before the DHO.

[8]  There is nothing before the Court to suggest that this evidence was part of the record before the DHO.

7

- Contrary to the statement made by the Regional Officer on appeal, Petitioner was not Hines' cell mate, and was not assigned to the room where the cellular phone was found.[9]

Pet. Mem., pp. 4-5; Pet. Reply, pp. 1-2.

This Court rejects Petitioner's arguments because the determination of the DHO met the "some evidence" standard articulated by the Supreme Court in Hill has been met. The "requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." Hill, 472 U.S. at 455. This standard is satisfied if:

> 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' United States ex rel. Vajtauer v. Commissioner of Immigration, [273 U.S. 103, 106 (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56 (emphasis added).

According to Hill, the findings of a prison disciplinary authority cannot be overturned even where the supporting evidence "might be characterized as meager," or wholly circumstantial. Id. at 457. "Revocation of good time credits is not comparable to a criminal conviction... [citation omitted], and neither the amount of evidence necessary to support such a conviction... [citation omitted], nor any other standard greater than some evidence applies in this context." Id. at 456. Again, as long as there is at least some evidence to support the arbiter's decision, and the disciplinary action is not wholly insupportable, the requirements of due process are met.

---

[9] This statement by the Regional Officer was not made by the DHO. The DHO's report only indicated that the cell phone was recovered from the same inmate housing unit to which Petitioner was assigned.

8

Here, the evidence before the DHO and upon which the DHO relied indicated that Petitioner resided in the same dorm unit (not the same room) as Hines; the number for Petitioner's mother-in-law was found on Hines' cell phone and matched the number on Petitioner's inmate telephone list; the records showed that Petitioner had been in communication with this phone number commencing on February 27, 2006 (which was <u>before</u> the phone was seized); Petitioner was the only inmate with this telephone number on a inmate telephone list; and the cell phone did not have any numbers in it belonging to Hines. The issue before the DHO was not whether the evidence established that Petitioner owned the phone – in fact, the DHO acknowledged that the phone belonged to Hines and was found in Hines' room. The issue was whether the greater weight of evidence supported the charge that Petitioner had <u>access to the phone</u>, regardless of the identity of its owner. This Court concludes the evidence upon which the DHO based his decision supported a finding that Petitioner did have access to the phone and as such, constitutes "some evidence."[10] See <u>Mason v. Sargent</u>, 898 F.2d 679, 680 (8th Cir. 1990) ("some evidence" standard satisfied where contraband found in locker shared by two inmates); <u>Thompson v. Hawk</u>, 978 F.Supp. 1421, 1423 (D.Kan. 1997) ("some evidence" standard satisfied by constructive possession).

In sum, the Court finds that the record in this case provides at least some evidence to support the DHO's determination that Petitioner committed the prohibited

---

[10] Petitioner makes much of the fact that his mother-in-law's phone number was not added to his telephone list until late in April 2006, a couple months after the phone was confiscated. That fact is not dispositive because the evidence before the DHO showed that Petitioner was in communication with this phone number prior to the confiscation of the phone. In other words, the phone records established a nexus between the phone number on Hines' phone and Petitioner to support the inference of Petitioner's access to the cell phone.

9

act of Conduct Which Disrupts the Security or Orderly Running of the Institution, Most Like Possession of a Hazardous Tool (Code 199, most like Code 108). Therefore, the DHO's decision in this matter should not be overturned by a writ of habeas corpus. See Goff v. Dailey, 991 F.2d 1437, 1442 (8th Cir. 1993) (the outcome of prisoner disciplinary proceedings will be upheld by the federal courts if it is supported by some evidence in the record), cert. denied, 510 U.S. 997 (1993).

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

Dated:   June 15, 2009

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 3, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.